**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LYNN R. ZWYGART,

        Plaintiff-Appellant,

v.

BOARD OF COUNTY
COMMISSIONERS OF JEFFERSON
COUNTY, KANSAS,

        Defendant-Appellee.

No. 06-3084

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 05-CV-2050-JWL)**

---

Alan V. Johnson, Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C.,
Topeka, Kansas, for Plaintiff-Appellant.

Carolyn L. Matthews (James D. Oliver, with her on the brief), Foulston Siefkin
LLP, Wichita, Kansas, for Defendant-Appellee.

---

Before **KELLY**, **McCONNELL**, and **HOLMES**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

      In 2002, the Jefferson County Road Department fired Lynn Zwygart from

his position as a truck driver after twelve years of attendance-related problems.

He was subsequently reinstated after signing a contract that expressly acknowledged the County's right to fire him for taking unpaid leave. In 2003, the County exercised its contractual right and fired Mr. Zwygart because he failed to accrue sufficient paid leave, beyond the twelve weeks of leave provided by the Family and Medical Leave Act, to excuse his absence following an open-heart surgery. Mr. Zwygart sued, alleging that the County's actions violated his rights under the Americans with Disabilities Act and the Due Process Clause. The district court granted the County's motion for summary judgment on both claims. We agree that Mr. Zwygart has not demonstrated a triable issue of fact on either claim and therefore affirm the district court's judgment.

**I.**

The Jefferson County Road Department hired Mr. Zwygart as a truck driver in 1986. After four years of apparently satisfactory performance, he began displaying attendance problems: in 1990, he used 178 hours of leave without pay; in 1996, he received a written warning for taking 172 hours of leave without pay and 91 hours of sick leave "under questionable circumstances"; and in 1997, he received a second written warning after taking 102 hours of leave without pay. App. 42.

Mr. Zwygart did not alter his behavior in response to the written warnings. In 2000, he was put on probation and later suspended for not providing doctor's notes to account for his time off. In June 2000, the County told Mr. Zwygart that

he had failed to meet conditions imposed in 1997 for his continued employment, including accumulating five days of sick leave and not taking leave without pay. On October 9, 2000, Zwygart secured his supervisor's written acknowledgment that he had accumulated the required amount of sick leave; within five weeks of doing so, however, he had used it all.

In September 2001, Mr. Zwygart had open heart surgery. He exhausted his annual statutory allotment of Family and Medical Leave Act leave while recuperating before returning to work full time in December 2001.

Mr. Zwygart's first post-surgery annual performance review occurred in July 2002. It culminated in this July 17, 2002, termination letter from his supervisor:

> I have reviewed your work performance evaluations and performance history with Jefferson County Road Department and have found it to be below satisfactory.
> As you know from our prior communications, the failure to improve your performance would result in termination from employment. Your performance record this year falls far short of the improvement necessary for you to be retained.
> Consequently, this letter is to inform you that your employment with Jefferson County has been terminated as of today.

App. 44.

Mr. Zwygart contested this termination by filing a grievance as outlined in the County's employee handbook. The grievance procedure requires department heads to respond to employee grievances "within three . . . working days" and "sincere[ly] attempt . . . to resolve any grievance at this initial step." *Id.* at 64.

The mechanism worked; eight days after he filed the grievance, Mr. Zwygart was reinstated after signing—while represented by counsel—a contract with the County that made his continued employment contingent on these conditions: "1. All use of sick leave will require a doctor slip. 2. For no reason will leave without pay be granted. 3. Any violation of these conditions will result in immediate termination." *Id.* at 46.

The reinstatement contract, like the written warnings years earlier, did not have much effect on Mr. Zwygart's actions. In February 2003, Zwygart's supervisor sent him another letter, which states in part:

> Six months ago the County Commission and myself discussed the problem with your work attendance.
> At that time your work attendance was unsatisfactory and as a condition of employment you were instructed to do a better job of managing your time off from work. As of today you are out of vacation and sick leave. You've also used your discretionary day. The only paid time off you've accrued is 2 1/4 hours of comp-time.
> It's clear that you do not intend to accumulate leave to prevent time off due to unforeseen emergencies or medical needs. This would cause you to take leave without pay, which I will not grant. You have been warned that any use of leave without pay will result in termination.
> This letter is to notify you that I am placing you on probation for the next six (6) months. During this time you will be required to accumulate five (5) days of paid leave. . . .

Appellee's Supp. App. 76.

In May 2003, three months after receiving this letter, Mr. Zwygart was diagnosed with a bacterial infection related to the prosthetic heart valve he had received in his 2001 surgery. On May 19, his doctor provided a "Certification for

-4-

Work" stating that Mr. Zwygart "has been under my care from 05/12/2003 to present" and "should be off work until further notice." App. 47. Shortly thereafter Mr. Zwygart began a long-term intravenous antibiotics regimen that continued until September 3, 2003, when he underwent a second open heart surgery to repair a leak around his prosthetic valve. His primary care physician cleared him to return to work on November 28, 2003.

After receiving the May 19 work release from Mr. Zwygart's doctor, the County granted Zwygart twelve weeks of FMLA leave. When that leave expired, Zwygart used his accumulated sick leave and vacation leave, as well as sick leave other employees had donated to him. Combined, these sources allowed Mr. Zwygart to remain on approved leave through September 15, 2003—well short of his November 28 return-to-work date.

Beginning September 15, 2003, the County's records list Mr. Zwygart's absences as leave "without pay." App. 56–57. The County classified his absences as such until Mr. Zwygart was fired on October 30, 2003, by this letter from the County engineer:

> I regret having to write this letter to you. However, in my capacity with the Jefferson County Road and Bridge Department, I must notify you that you are no longer employed with the County.
> As you know, you have long exhausted all sick, vacation and other time, which you have used since the onset of your medical condition. Additionally, the County has provided you more than the 12 weeks of unpaid medical leave required by the County's Family and Medical Leave Policy. Everyone was hopeful that your condition would improve and that you could return to your position.

> Unfortunately, that has not occurred and the County can no longer hold your position for you. . . .

*Id.* at 52.

As he did two years earlier, Mr. Zwygart filed a grievance contesting his termination. This time, however, he received no response from his supervisor, so he forwarded his complaint to the Board of County Commissioners as the grievance policy instructs.

The Board appointed a committee to investigate Mr. Zwygart's grievance. It held a hearing on December 1, 2003, where Mr. Zwygart testified while represented by counsel that his health was good and that he could return to work as a truck driver. The committee took other evidence, including the November 28 letter from Mr. Zwygart's primary care physician. After the hearing, Mr. Zwygart submitted a note from his cardiologist dated December 3, 2003, that affirmed Mr. Zwygart's capacity to return to work without restriction.

After reviewing the evidence, the committee issued a report on December 5 recommending that the Commission uphold Mr. Zwygart's termination for six different reasons. Three days later, the Commission adopted the committee's recommendation and unanimously sustained Mr. Zywgart's termination.

Mr. Zwygart then sued the County for wrongful discharge and failure to accommodate in violation of the ADA, and for depriving him of a property interest in his continued employment without due process in violation of the

Fourteenth Amendment. The County moved for summary judgment on all of Mr. Zwygart's claims. The district court granted the County's motion, holding that Mr. Zwygart was not disabled within the meaning of the ADA and that he failed to establish he had a protected property interest in his employment. Mr. Zwygart timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### A.

We review *de novo* the district court's grant of summary judgment. *Adair Group, Inc. v. St. Paul Fire & Marine Ins. Co.*, 477 F.3d 1186, 1187 (10th Cir. 2007). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A genuine issue of material fact exists when "the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

### B.

Mr. Zwygart first appeals from the district court's grant of summary judgment on his ADA claim. A prima facie case of ADA discrimination consists of three elements: the plaintiff (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential

functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). The district court held that Mr. Zwygart failed to establish the existence of a genuine issue of material fact as to the first element, so it did not address the second and third elements. We agree that Mr. Zwygart failed to introduce evidence from which a reasonable jury could find that he was disabled.

Before reaching the merits of the district court's holding, however, we must address an argument raised by the County on appeal and pressed during oral argument. According to the County, Mr. Zwygart's termination occurred on October 30, 2003, the date he received a letter of termination signed by the County engineer, his supervisor. Because it is undisputed that, as of October 30, Mr. Zwygart's doctor had not released him to return to work, the County argues that he could not have been a "qualified individual" within the meaning of the ADA: with or without accommodation, he could not perform the essential functions of the job. Appellee's Br. 10; *see Mason v. Avaya Commc'ns*, 357 F.3d 1114, 1119–22 (10th Cir. 2004) (describing "essential functions" test and holding that regular job attendance can be an essential function). In response, Mr. Zwygart argues that his termination did not become official until December 8, 2003, when the grievance process was complete and the Board of Commissioners adopted the recommended termination. Under these circumstances, the date of

termination would seem to be a question of law, and thus susceptible to resolution on summary judgment. Our examination of the record reveals, however, that in its reply brief in support of the motion for summary judgment, the County expressly conceded that "as a result of Plaintiff's filing of a grievance, the effective date of his October termination became the date the Commission adopted the findings of the committee, which occurred in December 2003." Appellee's Supp. App. 160. We must regard this concession as a waiver of the issue.

Taking December 8 as the relevant date of termination, we turn to the district court's holding that Mr. Zwygart was not disabled under the ADA. Congress defined the term "disability" in the ADA three ways. 42 U.S.C. § 12102(2)(A)–(C). Mr. Zwygart asserts that he is disabled under the second definition—that he has "a record of" an impairment that substantially limits a major life activity. *Id.* § 12102(2)(B). Under our precedent, a plaintiff seeking to prove a disability under § 12102(2)(B) must prove five elements: (1) the plaintiff has a record of, or has been misclassified as having, (2) a recognized impairment that (3) the plaintiff "actually suffered" and that (4) substantially limited (5) a major life activity. *Doebele v. Sprint/United Mgt. Co.*, 342 F.3d 1117, 1129, 1132 (10th Cir. 2003).

In this case, we are concerned mainly with the interplay between the fourth and fifth elements of this "record of" disability test. Mr. Zwygart's ADA claim

centers on the major life activity of working, which is entitled to ADA protection. *See Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152, 1158 (10th Cir. 2002). We determine whether an impairment "substantially limited" the major life activity of working by considering several factors. Some of these—"(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact, of or resulting from the impairment"—apply to any major life activity. *Id.* (internal quotation marks omitted). Others, however, are specific to the major life activity of working; these "includ[e] the geographical area to which the individual has reasonable access, and 'the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(A), (B)).

These additional factors are relevant to determining whether an impairment substantially limited the major life activity of working because the ADA's "statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Id.* at 491. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* (internal quotation marks omitted). Thus,

-10-

[t]o be substantially limited in the major life activity of working, . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Id.* at 492.

Based on this precedent, the district court held that Mr. Zwygart had not created a triable issue of fact as to whether his impairment "substantially limited" his major life activity of working because he "ha[d] not produced any evidence that he was restricted by his doctors from working any job other than as a truck driver for the County from May to December 2003." App. 104. Mr. Zwygart asserts on appeal, as he did below, that two pieces of evidence make that required showing: his doctor's May 19, 2003, certification for work stating that "Lynn should be off work until further notice," *id.* at 47; and his doctor's letter dated November 28, 2003, which states in part that Mr. Zwygart's cardiologist "specifically told him that he could not work while on the intravenous antibiotics and in the most recent perioperative period," *id.* at 48.

This evidence is insufficient to preclude summary judgment. In at least three cases, we have affirmed a district court's dismissal of an employee's ADA claim because the employee failed to provide "a single document or record helpful in addressing his 'vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which

[he] would also be disqualified.'" *Rakity*, 302 F.3d at 1162 (quoting *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir. 1994)); *see also Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1257 (10th Cir. 2001) ("[T]here is no evidence in the record from which a reasonable factfinder could conclude that, at the time of her employment with MIC, Ms. Selenke was unable to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person." (internal quotation marks omitted)). That same failure exists here. The May 19 doctor's certification establishes Mr. Zwygart's inability to work as a County truck driver, but it says nothing of his vocational training, the geographical area to which he had access, or the number and types of jobs at which he could have worked—the exact kind of evidence our cases require to avoid summary judgment. This evidentiary absence is fatal to Mr. Zwygart's efforts to preclude summary judgment.

The November 28, 2003, physician's note is likewise unavailing. In full, the passage Mr. Zwygart cites states: "*According to Mr. Zwygart*, his cardiologist specifically told him that he could not work while on the intravenous antibiotics and in the most recent perioperative period." App. 48 (emphasis added). As double hearsay—Mr. Zwygart said that his cardiologist said—this passage is inadmissible under Fed. R. Evid. 802 and therefore "not sufficient to defeat a motion for summary judgment." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (per curiam).

Mr. Zwygart's failure to provide evidence establishing his vocational training, the geographical area to which he had access, and the number and type of jobs demanding similar training from which he would have been disqualified from May to December 2003 dooms his claim. We therefore affirm the district court's judgment without addressing other factors relevant to the "substantially limited" analysis.

## C.

Mr. Zwygart also appeals from the district court's holding that the County did not deprive him of procedural due process when it fired him. A person alleging that he "has been deprived of his right to procedural due process" must prove two elements: that he possessed a constitutionally protected liberty or property "interest such that the due process protections were applicable," and that he was not "afforded an appropriate level of process." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994). The district court granted summary judgment after finding that Mr. Zwygart did not establish a triable issue of material fact as to whether he possessed a constitutionally protected property interest in continued employment as a County truck driver. We agree with the district court's ultimate conclusion but not with its reasoning.

Property interests do not stem from the Constitution itself; rather, they "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Bd. of*

*Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). When a plaintiff alleges that he has a property interest in state employment, we must decide "whether, under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it." *Id.* (quoting *Roth*, 408 U.S. at 577). We therefore turn to Kansas employment law to resolve Mr. Zwygart's claim.

In Kansas, employees are presumptively at-will "in the absence of an express or implied contract." *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 537 (10th Cir. 1995). In the district court, Mr. Zwygart argued that "he had an implied-in-fact contract of continued employment with the County, based upon the policies approved by the Board of County Commissioners and set forth in the [County's] Employee Handbook." Appellee's Supp. App. 95. The district court discussed those factors when it analyzed Mr. Zwygart's implied-in-fact claim under the totality of the circumstances test discussed in *Anglemyer*, 58 F.3d at 537, ultimately concluding that no implied contract existed. App. 108–10.

On appeal, Mr. Zwygart argues that three factors—the County's employee handbook, his supervisor's deposition testimony, and the parties' "common interpretation . . . [of] the County's leave without pay policy," Appellant's Br. 22—could have led a reasonable jury to find that he had an implied-in-fact contract for continued County employment. This argument, however, misses the point. While these factors may be relevant to deciding whether an implied

employment contract exists, they are irrelevant here because Mr. Zwygart signed an express contract of employment. On July 30, 2002, he was reinstated only after explicitly agreeing that his continued employment was contingent on these conditions: "1. All use of sick leave will require a doctor slip. 2. For no reason will leave without pay be granted. 3. Any violation of these conditions will result in immediate termination." App. 46.

It has long been Kansas law that "the existence of an express agreement precludes the idea of the existence of an implied one." *Ericson v. Charles*, 194 P. 652, 653 (Kan. 1921); *see also Brown v. Wichita State Univ.*, 540 P.2d 66, 75 (Kan. 1975) ("The existence of a valid express contract for services . . . precludes the implication of a contract covering the same subject matter." (internal quotation marks omitted)), *overruled on other grounds by Brown v. Wichita State Univ.*, 547 P.2d 1015 (Kan. 1976). Mr. Zwygart's express contract thus precludes a finding that an implied contract existed and eliminates the need to conduct an implied-contract analysis. The express contract also is subject to the Kansas Supreme Court's command that "[i]f the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." *Anderson v. Dillard's, Inc.*, 153 P.3d 550, 2007 WL 776866, at *4 (Kan. 2007). The terms of Mr. Zwygart's contract with the County are unequivocal. They therefore govern our inquiry into whether Zwygart had "'a legitimate claim of entitlement' in continued employment, as opposed to a

-15-

'unilateral expectation' or 'an abstract need or desire' for it." *Farthing*, 39 F.3d at 1135 (quoting *Roth*, 408 U.S. at 577).

By signing the contract, Mr. Zwygart expressly agreed that his "immediate termination" would result from taking leave without pay. This plain language leads but to one conclusion: Mr. Zywgart did not have a legitimate claim to continued employment if he breached the contract's conditions. To hold otherwise would be to flout the parties' clearly expressed intentions in dereliction of our duty to "give effect to" what the parties have "expressed within the four corners of the instrument." *Blair Constr., Inc. v. McBeth*, 44 P.3d 1244, 1252–53 (Kan. 2002).

When this topic arose during oral argument, Mr. Zwygart's counsel asserted that the County waived any rights it may have had under the contract by not firing Zwygart on September 16, 2003—the day he exhausted his approved leave, and thirteen days after his second open-heart surgery. We cannot agree. Under Kansas law, waiver is "the intentional relinquishment of a known right. The intent to waive known rights is essential." *Prather v. Colo. Oil & Gas Corp.*, 542 P.2d 297, 303 (Kan. 1975) (internal citations omitted). "Waiver must be manifested in some unequivocal manner by some distinct act or by inaction inconsistent with an intention to claim forfeiture of a right. Mere silence of a party is not waiver unless such silence is under circumstances requiring the party to speak." *Patrons Mut. Ins. Ass'n v. Union Gas Sys., Inc.*, 830 P.2d 35, 39 (Kan.

-16-

1992).  Mr. Zwygart does not point to any record evidence indicating the County intended to waive its right to fire him for taking unpaid leave.  Nor could he: the County in fact exercised its contractual right and fired him for his unpaid absences.

That Mr. Zwygart's termination letter arrived six weeks after he exhausted his leave, instead of two weeks after his open heart surgery, does not change our view.  Allowing a grace period is not equivalent to waiver.  Employers should not be penalized for failing to spy the clock and axe their employees nanoseconds after they are contractually able to do so.  We need not decide in this case what period of elapsed time without a termination is sufficient to show waiver; whatever it may be, we think the County was well within it by waiting six weeks before firing a man still recuperating after his second open-heart surgery in two years.

## CONCLUSION

We AFFIRM the district court's judgment dismissing Mr. Zywgart's ADA and due process claims.