**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 21, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ALETHIA ROSELLE ALLEN,

Plaintiff‑Appellant,

v.

SOUTHCREST HOSPITAL, a
domestic corporation; SOUTHCREST
FAMILY & MATERNITY CARE, a
foreign corporation; SOUTHCREST
LLC, a domestic corporation,

Defendants‑Appellees.

No. 11-5016
(D.C. No. 4:10-CV-00180-GKF-TLW)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

---

The Americans With Disabilities Act, 42 U.S.C. §§ 12101 - 12213 (ADA),

prohibits covered employers from discriminating against their employees on the

basis of disability.  *See id.* § 12112(a).  The ADA defines a "disability" as "a

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

physical or mental impairment that substantially limits one or more major life activities of [an] individual." *Id.* § 12102(1)(A). In this appeal, we must determine whether the plaintiff, Alethia Roselle Allen, was under such a disability when her employer, SouthCrest Hospital (SouthCrest), allegedly failed to accommodate her disability and terminated her employment. Because we conclude that Ms. Allen failed to demonstrate a genuine issue of material fact concerning her alleged disability, we affirm the district court's entry of summary judgment in favor of SouthCrest. As we affirm summary judgment on this basis, we need not reach the other issues presented by the parties.

## BACKGROUND

Prior to 2006, Ms. Allen worked as a medical assistant for a group of physicians known as the Family Medical Group (Family Medical). In 2006, SouthCrest acquired Family Medical. Ms. Allen thereafter accepted a position with SouthCrest working as a medical assistant with the same group of doctors she had previously worked for at Family Medical.

Ms. Allen's duties as a medical assistant included checking in patients, taking their vital signs, assisting doctors with medical procedures, calling in medication prescriptions, receiving and returning telephone calls from patients and discussing lab results with them, and removing staples and sutures. She also followed up with patient concerns and made outgoing telephone calls.

During her time at SouthCrest, Ms. Allen worked at first for Dr. Matthew Stevens in the Family and Maternity Care Clinic. In March 2009, she requested a transfer to work for Dr. Adam Myers, another physician in the Family and Maternity Care Clinic. SouthCrest agreed to the transfer, and shortly thereafter Ms. Allen began working as Dr. Myers' medical assistant.

Dr. Myers' office proved more stressful for Ms. Allen than Dr. Stevens' had been. Dr. Myers saw all of his patients on three half-days per week. There was a great deal of time pressure in his office, particularly during these three half-days. To help Ms. Allen manage her workload, her SouthCrest supervisor provided special training. Also, two other SouthCrest employees assisted her with checking patients in and with taking phone calls.

While working for Dr. Myers, Ms. Allen began to experience migraine headaches. The headaches occurred several times per week, but she did not suffer from them on a daily basis. Prior to her employment at SouthCrest, she had suffered only one migraine in her lifetime, when she was eighteen years old.

Ms. Allen's migraines varied in severity. As she described them, "[s]ometimes it was like I could get up and my head was still banging. But I wasn't dizzy or I wasn't nauseated. So I could keep moving. Then other times, those are the times that I didn't go to work." Aplt. App., Vol. I at 74. She saw a doctor at SouthCrest for the migraines, who prescribed her various medications to treat them.

In July 2009, Ms. Allen submitted a request for leave under the Family and Medical Leave Act (FMLA). She sought FMLA leave to care for her daughter, who was scheduled to give birth on July 31, 2009. SouthCrest denied the request for FMLA leave on July 31, 2009.[1]

On the next business day, August 3, 2009, Ms. Allen tendered her resignation to her SouthCrest supervisor, Carla Gunn. She later testified that she resigned because of her migraines and hypertension. *Id.*, Vol. II at 184.

On August 14, 2009, three days before the scheduled effective date of her resignation, Ms. Allen spoke with Sarah Samuelson, a human resources specialist at SouthCrest. Noting that several of her co-workers would be out on vacation on August 17, Ms. Allen offered to work past her resignation date to cover for these employees. SouthCrest authorized her to cover for the employees, but refused to give her back her resignation letter. Ms. Allen also refused to provide SouthCrest with a new resignation date.

On the morning of August 26, 2009, Ms. Allen became ill at work with a migraine and chest pains. She went to the emergency room and was treated for these conditions.

That evening, Ms. Allen's supervisors at SouthCrest, together with all the doctors in the Family and Maternity Care clinic, including Dr. Myers and

---

[1] Ms. Allen's complaint originally included a claim for interference with, or retaliation because of, her request for FMLA leave. She later abandoned that claim. *See* Aplt. App., Vol. II at 171 n.3.

Dr. Stevens, met for a regularly scheduled financial meeting. During the meeting, Ms. Allen's employment was discussed. It was noted that Ms. Allen wished to rescind her resignation. The doctors present decided not to allow the rescission, allegedly because of performance issues. Ms. Gunn called Ms. Allen the morning of August 27, 2009, to inform her of SouthCrest's decision to accept her resignation, effective that day.

A few months after leaving SouthCrest, Ms. Allen stopped having migraines. At the time of her deposition in September 2010, she had not had a migraine for approximately nine months. She does not assert that the migraines resumed after the time of her deposition.

Ms. Allen subsequently filed this action, which included ADA claims for failure to accommodate and wrongful termination. SouthCrest moved for summary judgment on all of her claims, arguing, among other things, that Ms. Allen was not disabled. South Crest noted that Ms. Allen made "no claim that [her] alleged conditions were long-lasting or that they are permanent in nature" and asserted that she admitted that "she was capable of driving and going about her normal life while experiencing them." *Id.*, Vol. I at 31. At the close of the hearing on SouthCrest's motion, the district court ruled as follows:

> The Court will grant the motion for summary judgment . . . as to [the ADA claims], primarily because [Ms. Allen] has not established the first element of a prima face case of ADA discrimination, that she is disabled within the meaning of the ADA.

Further as to [her] claim for termination in violation of the ADA, [Ms. Allen] has failed to establish the third element of a prima face case that her employer discriminated against her because of her disability because the employer's refusal to allow her to rescind her resignation is not under the law an . . . "adverse employment action," . . . in violation of the ADA.

*Id.*, Vol. II at 262. Ms. Allen has now appealed from the district court's award of summary judgment to SouthCrest.

## ANALYSIS

### 1. Standard of Review

We review the district court's grant of summary judgment de novo. *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011). "Summary judgment is appropriate if the admissible evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a)." *Id.* "In determining whether summary judgment is appropriate, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Id.* (quotation omitted).

Ms. Allen's complaint included both a "failure to accommodate" claim and a "wrongful termination" claim. To survive summary judgment on these claims, Ms. Allen bore "the burden of production with respect to a prima facie case." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999) (en banc)

Each of these claims required, as part of its prima facie case, that Ms. Allen show that she was a disabled person within the meaning of the ADA.[2]

### 2.  Was Ms. Allen "Disabled"?

A person is "disabled" under the ADA if she suffers from "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).[3]  To satisfy this definition, "a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (internal quotation marks omitted).  It is uncontested that Ms. Allen has the requisite

---

[2]    To make out a prima facie case of disability discrimination under the ADA relating to her termination, Ms. Allen had to show that, at the time her employment was terminated, (1) she was a disabled person as defined by the ADA; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) she was fired because of her disability. *Zwygart v. Bd. of Cnty. Comm'rs*, 483 F.3d 1086, 1090 (10th Cir. 2007).  "In order to establish a prima facie case of failure to accommodate in accordance with the ADA, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co, Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011) (quotation omitted). *Cf. also Smith*, 180 F.3d at 1178-79 (describing prima facie case for ADA claim of failure to accommodate by offering reassignment to a vacant position).

[3]    A person may also establish disability by showing that she has a record of such an impairment, or is regarded as having such an impairment.  29 C.F.R. § 1630.2(g)(1).  These alternate forms of disability are not at issue here.

impairment:  her migraine headaches.[4]  The issues on appeal involve the latter two disability factors.

We first consider whether Ms. Allen has identified major life activities that are substantially limited by her migraine headaches.  She contends that her migraines substantially limit the major life activities of "working" and "caring for herself."  Aplt. Opening Br. at 17.  She also mentions, briefly, her ability to sleep.  *See id.* ("During her migraines her ability to sleep is affected[.]").

While Ms. Allen mentioned in passing her difficulties with sleeping in her briefing and argument to the district court, *see* Aplt. App., Vol. II at 167, 170, 253, she made no specific argument that sleeping was a major life activity that was substantially affected by her migraines, *see id.* at 172 (arguing her headaches "substantially limit a major life activity" because when she had migraines Ms. Allen "could not care for herself" and they "substantially limited her ability to work for Dr[.] Myers"); 253-54 (arguing that "when Ms. Allen was experiencing these episodes of migraine headaches she could not care for herself" and they "did not allow her to perform in [her occupational] capacity with Dr. Myers").  Her argument concerning the major life activity of sleep was insufficiently developed in district court and is mentioned only in passing here.

---

[4]     Ms. Allen identifies her impairments as "hypertension, migraines, insomnia and heaviness in the chest."  Aplt. Opening Br. at 16.  Her allegations concerning substantial limitations are primarily tied to her migraines rather than the other conditions, however.

Accordingly, we will give no further consideration to "sleeping" as an alleged major life activity. *Cf. Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1086 n.2 (10th Cir. 2008) (rejecting attempt to assert argument concerning major life activity of "balance" for first time on appeal).

That leaves the other two alleged major life activities, working and caring for herself. As to these major life activities, we move to the third factor: whether her migraine headaches substantially limited Ms. Allen's ability to perform them.

### A. Caring for Oneself

Although Ms. Allen devotes most of her argument to the effect of her condition on her ability to work, we begin our analysis with the major life activity of "caring for oneself." We start here because we consider "the major life activity of working . . . only as a last resort." *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1162 n.5 (10th Cir. 2006). "If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working." *Id.* (internal quotation marks omitted).

SouthCrest argues that Ms. Allen specifically disclaimed any difficulties in the major life activity of "caring for herself." It further contends she later attempted to create a sham issue of fact on this point by using an affidavit to contradict her deposition testimony. SouthCrest draws our attention to the following portion of Ms. Allen's deposition:

Q. But most days, I guess, you could get up and go to work?

A. In the last couple, few months, no. But yes, I could. I could go. But I was dealing with it. I didn't have no choice. I had [to] go to work.

Q. I understand. But you did get up and you went to work?

A. Yes, sir. Yes, sir.

Q. *You could take care of yourself? You could take a shower and brush your teeth? You could hop in the car and drive to work.* Right?

A. *Yes.*

Q. And then you could do your job as best you could there. You could stay there eight hours a day, I gather.

A. Yes.

Aplt. App., Vol. II at 181-82 (emphasis added).

By itself, this testimony plainly does not establish that Ms. Allen's migraines substantially limited her ability to care for herself. As she points out, however, her testimony continued as follows:

Q. And then you could get back in your car and drive home and cook a meal or whatever else you had to do at home?

A. *No. When you get home, that's when you crash and burn.* Take medication that's going to make you go to sleep and you go to sleep.

Q. Was that every day?

A. Only when I had those migraines.

*Id.* at 182 (emphasis added).

-10-

In an affidavit submitted with her summary judgment response, Ms. Allen

clarified her reference to her need to "crash and burn" as follows:

> On the days I had headaches I would go home after work and "crash
> and burn." That is to say, *I could not function or take care of any of
> the routine matters of caring for myself.* I could not do anything
> other than go home and [] go straight to bed.

*Id.* at 192 (emphasis added).

Thus, taken as a whole, the evidence showed that Ms. Allen's migraines,

when active and treated with medication, did not permit her to perform activities

to care for herself in the evenings and compelled her to go to sleep instead.[5] But

---

[5]    Because of this evidence, we reject SouthCrest's argument that Ms. Allen's
statement in her affidavit represented an attempt to create a sham issue of fact.
*See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (stating "courts will
disregard a contrary affidavit when they conclude that it constitutes an attempt to
create a sham fact issue"). In determining whether an affidavit has been used to
create a sham factual issue, a key inquiry is "whether the earlier testimony
reflects confusion which the affidavit attempts to explain." *Id.* The statements in
Ms. Allen's affidavit explain what Ms. Allen meant by "crash[ing] and burn[ing]"
during her deposition testimony. We therefore conclude that the affidavit was
not designed to create a sham issue of fact, but to explain her earlier testimony.
       SouthCrest further argues that until Ms. Allen submitted her affidavit with
her summary judgment response, she had never alleged a substantial limitation in
any major life activity besides working. As evidence of her failure to timely
assert a disability in the major life activity of caring for herself, SouthCrest cites
her EEOC charge and her initial complaint. In these documents, however,
Ms. Allen was not required to provide a precise description of the major life
activity allegedly affected by her disability. *See* Fed. R. Civ. P. 8(a)(2) (requiring
that complaint contain "a short and plain statement of the claim showing that the
pleader is entitled to relief"); 29 C.F.R. § 1601.12 (discussing required contents
of EEOC charge); *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186
(10th Cir. 2007) (requiring that EEOC charge "contain facts concerning the
discriminatory and retaliatory actions underlying each claim," but noting charge
is "liberally construe[d]"). SouthCrest fails to show Ms. Allen waived or failed to

(continued...)

it was her burden to make more than a conclusory showing that she was *substantially* limited in the major life activity of caring for herself as compared to the average person in the general population. *See* 29 C.F.R. § 1630.2(j); *Johnson v. Weld Cty.*, 594 F.3d 1202, 1218 & n.10 (10th Cir. 2010) (allegation of sleep disturbance that included no basis for comparison with average person was insufficient to carry plaintiff's burden). A mere assertion that she took medication and slept after arriving at home for an unspecified period when undergoing a migraine attack rather than caring for herself was insufficient to meet this burden.

Ms. Allen's allegations and evidence on this point were conclusory at best. She presented no evidence concerning such factors as how much earlier she went to bed than usual, which specific activities of caring for herself she was forced to forego as the result of going to bed early, how long she slept after taking her medication, what time she woke up the next day, whether it was possible for her to complete the activities of caring for herself the next morning that she had neglected the previous evening, or how her difficulties in caring for herself on days she had a migraine compared to her usual routine of evening self-care.

She also made no attempt to show how the alleged limitations created by her need to "crash and burn" compared to the average person's ability to care for

[5](...continued)
timely assert her claim to be disabled in the major life activity of caring for herself.

herself in evenings after work. The average person, presumably, does not have to go to bed immediately upon returning from work and/or to medicate herself with somniferous medications to escape migraine symptoms. But this fact alone does not meet Ms. Allen's burden, since the average person also sleeps each evening and cannot care for herself while asleep, and sometimes goes to bed early. *See id.* at 1218 n.10 (noting, with regard to major life activity of sleeping, that *many* non-disabled people have nightmares or disturbed sleep patterns; the ADA plaintiff is obliged to present evidence that will permit *comparison* of the effects of his sleep disturbances to those experienced by the average person).

In sum, Ms. Allen's claim of a substantial limitation in the major life activity of caring for herself was insufficiently developed and insufficiently supported by the evidence. It was her summary judgment responsibility to present evidence sufficient to meet her burden of production on the "disability" element of her prima facie case. The district court properly rejected as unproven her claim of a substantial limitation in this major life activity.

### B. Working

We next address the major life activity of working. Ms. Allen admitted that her condition only affected her work for Dr. Myers. *See* "Objection to the Defendants' Motion for Summary Judgment & Brief in Support," Aplt. App., Vol. II at 173 ("[A]n individual such as Allen, *whose condition [a]ffects only the single job she is performing*[,] should fall under the protections of the amended

ADA." (emphasis added)). The record provides some support for this concession: she points to no evidence she suffered migraines while working for other physicians or on other jobs.[6]

This concession, however, poses a problem for Ms. Allen's ADA claim. To be disabled in the major life activity of working, an employee must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Heartway Corp.*, 466 F.3d at 1162; *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (2008). Work for a single physician hardly qualifies as a class or broad range of jobs.

Ms. Allen argues, however, that under the favorable definition of disability as clarified by the ADA Amendments Act of 2008 (ADAAA) and applied in the new regulations promulgated under the ADAAA, she can demonstrate disability in the major life activity of working even if she is only disabled from performing a single job. We disagree.

_____

[6]     Ms. Allen now argues that she *is* disabled from a broad class of jobs. Aplt. Opening Br. at 19-20. This, however, was not her argument in district court. *See* Aplt. App., Vol. II at 172-73. We need not address her modified argument on appeal; this court is not a "'second-shot forum' . . . where secondary, back-up theories may be mounted for the first time." *Tele-Communications, Inc. v. Comm'r of Internal Revenue*, 104 F.3d 1229, 1233 (10th Cir. 1997).

We begin by examining the ADAAA's statutory changes.  Congress passed the ADAAA with the explicit purpose of rejecting certain standards and reasoning of Supreme Court opinions regarding interpretation of the ADA[7] and "reinstating a broad scope of protection to be available under the ADA."  Pub. L. No. 110–325 § 2(b)(1), 122 Stat 3553-3554 (2008).  Accordingly, the ADAAA added language to the ADA providing for a broad construction of the definition of disability.  *See* 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.").  This new language became effective on January 1, 2009, before the relevant events in this case.  *See* Pub. L. No. 110-325, § 8, 122 Stat. 3559.

The ADAAA did not, however, explicitly discuss or modify the definition of the major life activity of working.  That definition was contained in the EEOC regulations interpreting the ADA.  Prior to the 2011 revision of these ADA regulations, the regulations specifically defined the phrase "substantially limits" in the case of the major life activity of working to apply only to impairments that prevented the employee from performing a *class of jobs or a broad range of jobs*. Thus, the applicable regulation formerly provided:

---

[7]    *Sutton v. United Air Lines*, 527 U.S. 471 (1999), and *Toyota Motor Manufacturing, Kentucky v. Williams*, 534 U.S. 184 (2002).

> With respect to the major life activity of *working*--
>
> (i) the term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (2010).

As Ms. Allen correctly points out, this language was eliminated in the amended regulations, which took effect on May 24, 2011.  Ms. Allen points to no language in these amended regulations that indicates they are to have retroactive effect.  Nor does she present any authority that would require us to apply these regulations retroactively to her case.  *Cf. EEOC v. AutoZone, Inc.*, 630 F.3d 635, 641 n.3 (7th Cir. 2010) (applying prior statutory definition of "substantially limits," together with case law interpreting that statute and existing implementing regulations, where plaintiff's claim arose prior to ADAAA amendment).  But even if we consulted the amended regulations as an aid to statutory interpretation of the ADAAA (which does apply to this case), as Ms. Allen urges us to do, they would offer her no support.

Ms. Allen argues that the omission of the narrowing language in the 2011 version of the regulation reflects congressional intent to broaden the scope of the definition of disability by eliminating the "class of jobs or broad range of jobs" limitation on the major life activity of working.  But as the Interpretive Guidance

to Part 1630, which also became effective May 24, 2011, explains, the language

was actually eliminated for a very different reason:

> The Commission has removed from the text of the regulations a discussion of the major life activity of working. This is consistent with the fact that no other major life activity receives special attention in the regulation, and with the fact that, in light of the expended definition of disability established by the Amendments Act, this major life activity will be used in only very targeted situations.

"Substantially Limited in Working," Appendix to Part 1630--Interpretive

Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. Pt. 1630,

App.

Moreover, the Interpretive Guidance goes on to explain that the "broad

class of jobs" restriction remains in place even after the amendment to the

regulations:

> In the rare cases where an individual has a need to demonstrate that an impairment substantially limits him or her in working, the individual can do so by showing that the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities.
>
> . . .
>
> Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working.

*Id.*

Thus, we conclude based on our existing case law, Supreme Court case law, the applicable statute, and the regulations, that to show a disability in the major life activity of working, Ms. Allen was required, even after the enactment of the ADAAA and the modified EEOC regulations, to demonstrate that she was substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities. She failed to do so.

For the foregoing reasons, Ms. Allen failed to meet her summary judgment burden to establish a prima facie case of disability discrimination. The district court therefore properly granted summary judgment to SouthCrest on her ADA claims.

The judgment of the district court is AFFIRMED.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge