**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 17, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHRESSA McFARLAND,

       Plaintiff - Appellant,

v.

THE CITY AND COUNTY OF
DENVER,

       Defendant - Appellee.

No. 17-1352
(D.C. No. 1:15-CV-01258-KMT)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **MURPHY**, and **McHUGH**, Circuit Judges.

I.    **Introduction**

    Plaintiff-Appellant Chressa McFarland applied for a position with the City
and County of Denver (the "City"). She was eliminated from consideration when
she failed to receive a passing score on a computer skills test that assessed her
knowledge of the web browser, Internet Explorer. McFarland brought an action
against the City pursuant to the Americans with Disabilities Act (the "ADA").

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

She asserted the City did not reasonably accommodate her during the application and testing process and discriminated against her when it refused to hire her. The district court granted the City's motion for summary judgment, concluding McFarland was responsible for a breakdown in the interactive process and, thus, could not show the accommodations provided by the City were unreasonable.

Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the grant of summary judgment in favor of the City.

## II.    Factual Background

In December 2011, the City solicited job applications for the position of 3-1-1 Customer Service Agent. McFarland applied for the job and was invited by the City to take a computer skills test. The software application utilized by the City in the test was provided by a company known as Prevaluate. It included testing modules for Internet Explorer ("Explorer") and Microsoft Outlook ("Outlook"). The invitation McFarland received from the City contained a notice informing her that she should notify the City within two days if she needed a reasonable accommodation during the application or testing process. McFarland, who is visually impaired, contacted the City and requested an accommodation. Specifically, she requested that the City provide her with screen-reading software known as JAWS.[1]

_____

[1]JAWS is an acronym for Job Access With Speech.

City employee Susan Maxfield told McFarland she would investigate the possibility of obtaining JAWS. Maxfield's email to McFarland read: "We know we can accommodate the typing test by reading to you but are awaiting information on securing speaking software for the Internet Explorer and MS Outlook test." McFarland did not respond to this email.

On January 17, 2012, McFarland was contacted by Lance Dorris who advised the testing would be conducted on January 19. When McFarland arrived, she was informed by Mr. Dorris that he would sit with her during the testing and read the questions to her.[2] McFarland testified she had assumed she would be using JAWS to take the tests, but conceded no one from the City previously told her JAWS would be available to her.

McFarland was tested on her knowledge of Outlook and Explorer. McFarland testified the Outlook test consisted of multiple choice and true/false questions. Mr. Dorris read the questions to McFarland and entered her responses into the computer. Dorris testified he navigated the screen for McFarland, moving the computer mouse to icons and menus and describing them to her. McFarland testified she had no problems with the process. She did, however, testify that even with the accommodations provided she was unable to answer questions that required her to identify colors and images.

_____

[2]McFarland was also given an indefinite amount of time to complete the tests.

McFarland also took the Explorer test which contained twenty-four questions, eight of which were labeled basic, eight were labeled intermediate, and eight were labeled advanced. According to the City, only the eight basic questions were relevant to the determination of whether an applicant advanced in the selection process. McFarland answered three of the eight basic questions correctly. Of the five basic questions McFarland answered incorrectly, four were related to the use of the Favorites function. As to all five incorrectly answered questions, McFarland testified the reader was a sufficient accommodation because she answered the questions using keystroke combinations and it was not necessary for her to see the computer screen.

Approximately one week after she took the test, McFarland contacted the Equal Employment Opportunity Commission and inquired into filing a complaint about the City's testing. This communication took place before McFarland received her test results and she admits she did not first contact anyone at the City to express concerns about the accommodations actually provided. On February 9, McFarland received a letter from the City informing her she was no longer in consideration for the 3-1-1 customer service position because she failed to receive a passing score on the relevant portion of the Explorer test.

McFarland filed a federal complaint on June 12, 2015. In it, she asserted one claim of employment discrimination in violation of the Americans with Disabilities Act ("ADA), arguing the City violated the ADA by not hiring her and

by failing to reasonably accommodate her during the employment testing.[3]  The

City moved for summary judgment, arguing McFarland was provided with a

reasonable accommodation.  The district court granted the motion, concluding

McFarland failed to participate in the interactive process of determining a

reasonable accommodation.  *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154,

1172 (10th Cir. 1999) ("The interactive process is typically an essential

component of the process by which a reasonable accommodation can be

determined."); *see also Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1315 (10th

Cir. 2017) ("To facilitate the reasonable accommodation, the federal regulations

implementing the ADA envision an interactive process that requires participation

by both parties." (alteration and quotations omitted)).

## III.   Discussion

### A.  Standard of Review

A district court's grant of summary judgment is reviewed de novo.  *Foster*

*v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016).  Under this

standard, we view the facts in the light most favorable to the nonmoving party

---

[3]McFarland also alleged the City used "qualification standards or other
selection criteria that screen out or tend to screen out an individual with a
disability or a class of individuals with disabilities."  *See* 42 U.S.C. §
12112(b)(6).  This allegation related to the City's request that applicants include
their driver's license information in their materials.  In the City's answer, it stated
this information was not considered or utilized in any way during the screening of
McFarland's employment application.  McFarland conceded the point in her
response to the City's motion for summary judgment.

and also draw all reasonable inferences in favor of the nonmovant. *Id*. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, a grant of summary judgment will be affirmed "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, for the purpose of the matter before this court, we must determine whether a reasonable jury could return a verdict in McFarland's favor based on the facts in the record, viewed in her favor.

McFarland raises two challenges to the district court's ruling. As to her claim that the City failed to accommodate her disability when it tested her for the 3-1-1 customer service position, she argues she was not responsible for the breakdown in the interactive process. As to her claim that the City violated the ADA by administering tests that screen out visually impaired applicants based on their disability, she argues the district court erred by concluding the interactive process was relevant to that claim.

### B. Failure to Accommodate

McFarland's failure-to-accommodate claim arises under 42 U.S.C. § 12112(a)(5) which requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability who is an applicant or employee." To facilitate the reasonable accommodation of applicants with disabilities, "[t]he federal regulations implementing the ADA envision an interactive process that requires participation by both parties." *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quotation omitted). Both parties argue McFarland's prima facie burden requires her to show (1) she is a qualified individual with a disability, (2) the City was aware of her disability, and (3) the City failed to reasonably accommodate the disability. *See Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011) (unpublished disposition); *see also Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (describing the purpose of the prima facie burden in a failure-to-accommodate case as providing a useful structure to enable the district court to evaluate the sufficiency of the plaintiff's evidence). The district court focused on the third element of this prima facie test, concluding McFarland could not show the City failed to provide reasonable accommodation because she was solely responsible for the breakdown in the interactive process. District Ct. Order at 17-19. Specifically, the court concluded the interactive process broke down when McFarland failed to inform the City that, despite the accommodations provided to her, she had difficulty completing the computer skills test.

McFarland argues the question of responsibility for a breakdown in the interactive process is one for the jury. She asserts a genuine issue of material fact precludes summary judgment because there is evidence from which a jury could

conclude she disclosed her disability promptly and asked for a specific accommodation—JAWS software. The interactive process, however, requires ongoing participation from both parties. *Templeton*, 162 F.3d at 619. Both the employer and the employee have a responsibility to share relevant information in an attempt to craft a reasonable accommodation.

The evidence, viewed in McFarland's favor, shows that McFarland requested an accommodation and, in response, the City provided one. There is also testimony from McFarland herself that she never told Mr. Dorris or anyone else at the City that she was unable to answer any test questions because the accommodations were insufficient. Further, she did not contact the City after she completed the test to voice her concerns about the accommodations provided. Instead, she contacted the EEOC and inquired into filing a charge against the City.

No genuine issue of material fact precludes the entry of summary judgment in this matter. An employer cannot be expected to correct an impediment of which it is not aware. *See id.* ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process." (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1136 (7th Cir. 1996))). The evidence, even viewed in McFarland's favor, leads to only one reasonable conclusion—McFarland's failure

to communicate with the City was the sole cause of the breakdown in the interactive process. A reasonable jury, therefore, could not find that the City violated the ADA by failing to provide McFarland with a reasonable accommodation. *See Beck*, 75 F.3d at 1135.

C. *Most Effective Manner*

McFarland also argues the district court erred by dismissing her claim that the computer skills tests were not selected and administered in the "most effective manner" to ensure that the results accurately reflected her skills and not her visual impairment. 42 U.S.C. § 12112(b)(7). She asserts the district court failed to address this issue before dismissing the claim. The City counters that the district court's ruling on the interactive process disposes of this claim also. McFarland, however, disputes that the interactive process for identifying a reasonable accommodation is applicable to a § 12112(b)(7) claim.

In her EEOC charge, McFarland alleged the Outlook portion of the computer skills test relied, in part, on visual clues. McFarland provided, as examples, a test question that "asked if an e-mail was marked tentative" and questions that asked about the appearance of backgrounds and borders. The charge also contained an assertion McFarland was unable to answer several questions that required her to actually see the computer screen. In her response to the City's motion for summary judgment, McFarland again focused her claim on being asked "visual test questions that inquired about colors, borders, shading and

icons." She argued the test "contained many questions that tested her vision rather than how she would perform" if she was selected for the customer service position. She further argued many of the questions could not be answered by using keyboard commands. In her opening appellate brief, McFarland again focuses her argument on her inability to see the colors, visual icons, shading, and borders on the computer monitor during her Outlook test, stating: "It was not most effective to ask Ms. McFarland thirty-three questions about colors, visual icons, shading or borders." Appellant Br. at 18. In the City's reply in support of its motion for summary judgment, it referenced uncontroverted evidence showing that McFarland's answers on the Outlook test did not bear on whether she advanced to the next step of the hiring process.

The district court addressed this claim on the merits, concluding McFarland's performance on the Outlook test did not have any bearing on the City's decision to eliminate her from consideration for the customer service position. District Ct. Order at 10. The district court also noted that McFarland passed the Outlook test. *Id.* McFarland does not address these two points in her appellate briefing but they are undeniably correct. As the district court ruled, McFarland's claim fails because she has presented no evidence that her inability to see the computer monitor during the Outlook test caused her to be eliminated from consideration. *See Celotex Corp.*, 477 U.S. at 322 (holding summary judgment is appropriately granted if the nonmovant cannot "establish the

-10-

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). McFarland conceded that all the questions she was unable to answer were part of the Outlook portion of the computer skills test. She also stated those questions were ones that required her to click on icons rather than use keyboard commands.[4] Thus, a reasonable jury could not conclude that McFarland's inability to answer questions on the Outlook test that required her to see the computer monitor was the cause of her elimination from consideration for the customer service position.

In her response to the City's motion for summary judgment, McFarland also argued she was disqualified from consideration because the City's testing process was flawed. This argument related to the answers McFarland gave to the eight basic questions on the Explorer portion of the computer skills test that were actually relevant to the determination of whether an applicant advanced in the hiring process. McFarland answered three of those questions correctly—a number insufficient to remain in consideration for the customer service position. In its motion for summary judgment, the City argued McFarland failed to pass the Explorer portion of the computer skills test because she did not know the correct answers, not because of the accommodation it provided. The City supported this argument with McFarland's own testimony that the accommodation provided by

_____

[4]This testimony is consistent with McFarland's EEOC charge which stated: "The test did not allow for navigating though[] the toolbars with the arrow keys; tabbing to the subgroups; not entering keyboard shortcut keys."

the City was sufficient to permit her to answer the five questions she answered incorrectly. McFarland also testified the human reader was not a factor in her inability to correctly answer the questions.

McFarland admitted in her response to the City's motion for summary judgment that she entered incorrect answers to questions 12, 13, 16, 22, and 23 by using keyboard commands, a method she testified she was familiar with and was able to use without seeing the computer monitor. She further admitted that the incorrect answer she gave to question 12 was unaffected by any lack of accommodation. She argued, however, that she provided incorrect answers to questions 13, 22, and 23 because those questions had a "unique flaw." Specifically, McFarland faulted the City for failing to tell her she was being tested on version 5 of Internet Explorer, a version that was several years old at the time of testing.[5] In her response to the City's statement of undisputed facts, she stated the answers she provided to questions 13, 22, and 23 would have been scored as correct if the City had been testing her proficiency in using version 8 of Internet Explorer. McFarland also alleged she was not able to see any visual cues to the differences in the version of Explorer being tested. She argued she was

---

[5]It is unnecessary to resolve the question of whether the interactive process applies to McFarland's § 12112(b)(7) claim because the claim fails as a matter of law for an independent reason supported by the record. *See Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000) (holding this court may affirm a district court's decision to grant summary judgment for any reason supported by the record).

significantly disadvantaged because she had "no idea" the keyboard commands she entered were incorrect.

The crux of McFarland's argument is that she was unaware she was being tested on her knowledge of version 5 of Internet Explorer, either because the City did not so inform her or because she could not see visual clues that would so alert her. But the record contains no evidence from which a jury could conclude an applicant without a visual impairment would be aware she was being tested on version 5 rather than version 8. Specifically, McFarland's brief does not reference any record evidence confirming there is a noticeable difference to a user between version 5 and version 8 or that a sighted applicant would know the Explorer test was based on version 5. Nor is there any evidence that a sighted applicant receives visual feedback from the Prevaluate software application when she enters an incorrect answer or keystroke combination, thereby possibly alerting her that she is being tested on a version with which she is not familiar.[6]

---

[6]This record deficiency may be attributable to the fact McFarland's claim has evolved over the course of this litigation. Her performance on the Explorer test was not specifically mentioned in her complaint in which she asserted claims based on the Outlook test and information the City requested about whether she had a driver's license. During discovery, however, McFarland was provided with her detailed test results for the Outlook and Explorer tests. In the City's response to McFarland's first set of discovery requests, dated May 4, 2016, the City refers to the Explorer test as the "MS IE5 Standard" test. Yet, in a deposition conducted on June 14, 2016, McFarland's expert testified he believed, without any basis in fact, that McFarland did not pass the Explorer test because it had been graded incorrectly and McFarland had correctly answered all the questions relating to the Favorites menu. After discovery was complete and the City's motion for

(continued...)

-13-

McFarland's claim fails at the summary judgment stage for another reason. She has never explained how the City's failure to tell her she was being tested on Explorer version 5 caused her to miss questions 13, 22, and 23. As the City argued in its reply brief in support of its motion for summary judgment, there is no evidence from which a jury could conclude McFarland would have entered correct answers to questions 13, 22, and 23 if she was aware she was being tested on her knowledge of Explorer version 5. *See* n.6 *supra*. There is no evidence McFarland knew the correct keystrokes in version 5. Without such evidence, McFarland cannot show it was her inability to see the computer screen that caused her to answer questions 13, 22, and 23 incorrectly, rather than her lack of knowledge of version 5 of Internet Explorer.[7] Thus, her claim that the Internet Explorer test administered by the City reflects her impairment rather than her aptitude fails as a matter of law. *See* 42 U.S.C. § 12112(b)(7).

---

[6](...continued)
summary judgment was filed, McFarland refined her argument in her response to the City's motion for summary judgment. There, she argued the Explorer test was "flawed" because the answers she gave to three of the questions were correct in version 8 of Internet Explorer.

[7]Susan Maxfield, the City employee responsible for validating the Prevaluate test modules, testified that the Explorer test administered to the 3-1-1 customer service applicants was specifically chosen because it measured job-related skills and abilities.

## IV. Conclusion

The judgment of the district court granting summary judgment in favor of the City is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge