**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MIKE LEE CASTANON; ELITE
OILFIELD SERVICES, LLC,

    Plaintiffs - Appellants,

v.

KELLY CATHEY, an individual; MIKE
CORY, an individual; RICHARD
BICKLE, an individual; DAVID MOORE,
an individual; OKLAHOMA HORSE
RACING COMMISSION,

    Defendants - Appellees,

and

DEBBIE SCHAUF, an individual,

    Defendant.

No. 19-6141
(D.C. No. 5:18-CV-00537-R)
(W.D. Okla.)

_____

**ORDER**
_____

Before **BACHARACH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

This matter is before the court on the *Appellants' Petition for Panel or En Banc*

*Rehearing* ("Petition"). We also have a response from Appellees.

Pursuant to Fed. R. App. P. 40, the request for panel rehearing is granted in part to

the extent of the modifications in the attached revised opinion. The court's August 14,

2020 opinion is withdrawn and replaced by the attached revised opinion. Because the revised opinion contains only non-substantive changes that do not affect the outcome of this appeal, it shall be filed *nunc pro tunc* to the date the original opinion was filed. Appellants may not file a second or successive rehearing petition. *See* 10th Cir. R. 40.3.

The Petition was transmitted to all judges of the court who are in regular active service. As no member of the panel and no judge in regular active service requested that the court be polled, the request for en banc review is denied. *See* Fed. R. App. P. 35(f).

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

FILED
United States Court of Appeals
Tenth Circuit

August 14, 2020

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MIKE LEE CASTANON and ELITE
OILFIELD SERVICES, LLC,

      Plaintiffs - Appellants,

v.

KELLY CATHEY, an individual,
MIKE CORY, an individual,
RICHARD BICKLE, an individual,
DAVID MOORE, an individual,
DEBBIE SCHAUF, an individual,
and OKLAHOMA HORSE RACING
COMMISSION.

      Defendants - Appellees.

No. 19-6141

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:18-CV-00537-R)**

_____

Clark O. Brewster, Brewster & De Angelis, P.L.L.C., Tulsa, Oklahoma
(Mbilike M. Mwafulirwa with him on the briefs), for Plaintiffs-Appellants.

Randall Yates, Assistant Solicitor General, Oklahoma City, Oklahoma
(Jacqueline R. Zamarripa, Assistant Attorney General, Oklahoma City,
Oklahoma with him on the briefs), for Defendants-Appellees.

_____

Before **BACHARACH**, **MURPHY**, and **MORITZ**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal stems from the disqualification of two horses from two races. The plaintiffs owned two horses registered to race, but state racing officials determined that the horses were ineligible. The owners sued, alleging denial of due process in disqualifying one of the horses. The district court dismissed the claim based on the absence of a property or liberty interest. The owners asked the district court to alter or amend the judgment. The district court denied this request, and the owners appeal. We affirm the denial of the motion to alter or amend.

When moving to alter or amend the judgment, the owners

- reasserted one argument that the district court had rejected and

- asserted two new arguments that could have been raised earlier.

The district court acted within its discretion in rejecting these arguments as a basis to alter or amend the judgment, for these arguments are procedurally and substantively invalid.

The arguments are procedurally invalid because they are not suitable for a motion to alter or amend the judgment. This kind of motion cannot be based on the reassertion of earlier arguments or the assertion of new arguments that could have been raised earlier. So the owners could not properly raise any of these arguments in a motion to alter or amend the judgment.

These arguments are also substantively invalid because the racing officials' disqualification of the horses did not deprive the owners of a property or liberty interest.

## I. Officials disqualified the plaintiffs' horses based on suspension of the trainer.

The plaintiffs owned two horses: *EOS A Political Win* and *EOS Trumpster*. *EOS Trumpster* won a horse race, and *EOS A Political Win* was set to run in a later race. Both horses had the same trainer.

Between the two races, the Oklahoma Horse Racing Commission found that *EOS Trumpster* had tested positive for a banned substance. This finding led the Commission to suspend the trainer's horse-racing license. Because this trainer also handled *EOS A Political Win*, officials disqualified *EOS A Political Win* from the upcoming race.

But officials allegedly waited to tell the owners about the disqualification of *EOS A Political Win*. The delay allegedly prevented the owners from seeking judicial review before the race, so the owners asked the Commission's Executive Director to stay the order of disqualification. He declined, and the race proceeded without *EOS A Political Win*.

After the race, the owners sued for a denial of due process, naming the Commission and four of its officials (the Executive Director and three

3

stewards).[1] The Commission and its four officials moved to dismiss the complaint and the district court granted the motion, holding that

- the owners lacked a property or liberty interest protected by the Fourteenth Amendment and

- any potential property or liberty interest would not have been clearly established.

The owners then moved to alter or amend the judgment. As part of the motion, the owners sought permission to amend the complaint. The district court denied the motion to alter or amend.

## II. The district court acted within its discretion when declining to alter or amend the judgment.

In their motion to alter or amend the judgment, the owners asked the court to reconsider the existence of a property or liberty interest.[2] The district court declined to alter or amend the judgment, and we review that ruling for an abuse of discretion. *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019). In conducting that review, we conclude that the district court didn't abuse its discretion in light of the absence of a protected interest.

---

[1]     The owners also sued the Executive Director of the Oklahoma Quarter Horse Racing Association. But the claim against this individual is not involved in the appeal.

[2]     The owners also urged reconsideration on the issue of qualified immunity. But we need not address this issue.

**A. The owners claim three property or liberty interests.**

Procedural due process is required when a plaintiff is deprived of "interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). To evaluate a claim involving procedural due process, we ask (1) whether the defendants' actions deprived the plaintiffs of a property or liberty interest and (2) if so, whether the plaintiffs "were afforded the appropriate level of process." *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1308–09 (10th Cir. 2018) (quoting *Pater v. City of Casper*, 646 F.3d 1290, 1293 (10th Cir. 2011)).

Property interests arise from "existing rules and understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577; *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991). Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' . . . or . . . from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The owners assert three interests:

1. an interest in a government-sponsored program,

2. an interest in using property to pursue business or leisure, and

3. an interest in a state cause of action for judicial review.

5

**B.** **The owners couldn't assert these interests in the Rule 59(e) motion to alter or amend the judgment.**

The owners waited to invoke two of the purported interests until the motion to alter or amend the judgment: (1) an interest in a government-sponsored program and (2) an interest in using the property to pursue business or leisure. In asserting these interests, the owners invoked Federal Rule of Civil Procedure 59(e).[3] This rule allows litigants to ask the court to reconsider adverse judgments. But the remedy is limited: a court can grant relief under Rule 59(e) only when the court has "misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Given the parties' interests in the finality of judgments, Rule 59(e) motions are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* The owners could have invoked these purported property and liberty interests when opposing the motion to dismiss. But the owners instead waited to assert these interests until they filed their Rule 59(e) motion.

The owners offer no excuse for their delay. When asked if the owners could have presented the arguments earlier, the owners' attorney responded that "[w]e could have, I suppose." Oral Arg. at 8:00. Because the owners

---

[3] The owners also moved for relief under Rule 60(b)(6). But the Rule 60(b)(6) motion isn't at issue in this appeal.

6

could have raised these arguments earlier, the district court could have declined to consider these arguments newly asserted in the Rule 59(e) motion. But the district court went on to address these arguments on the merits, and we do so, too.

The owners also urge a property interest in their state cause of action for judicial review. This argument appeared in the owners' response to the motion to dismiss. *See* Appellants' App'x at 115 ("[A]s OHRC licensees, the Oklahoma Rules of Racing entitled Plaintiffs to notice of impending adverse action and a meaningful opportunity to be heard."). But Rule 59(e) "may not be used to relitigate old matters," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995)), unless a party shows that the district court misunderstood the facts or the law, *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). This part of the motion to alter or amend the judgment simply rehashed the owners' response to the motion to dismiss. So the district court could have declined to consider the owners' reasserted argument. But the court went on to address this argument on the merits, and we do so, too.

## C. These arguments do not support a property or liberty interest.

The owners' arguments fail on the merits because the state racing officials did not deprive the owners of a property or liberty interest.

**1.    The owners lacked a property or liberty interest in a government-sponsored program.**

In asserting an interest in a government-sponsored program, the owners rely on an Oklahoma statute and the Oklahoma Administrative Code, which require participants in a state-sanctioned horse race to be licensees, to have a horse and trainer, and to register the horse. *See* Okla. Stat. tit. 3A § 204(A); Okla. Admin. Code §§ 325:15-5-1(1)(B)–(C); 325:35-1-5(b)(4). The owners argue that they satisfied these requirements, triggering a property or liberty interest.

But the owners don't show any limits on the discretion of state racing officials to disqualify *EOS A Political Win*. The owners argue that a state regulation limits discretion by providing specific grounds for denial, refusal, suspension, or revocation of a license by the stewards. Okla. Admin. Code §§ 325:1-1-7(a), (c)(2); *id.* 325:15-5-10(a).

But the owners never explain why the stewards lacked discretion to disqualify *EOS A Political Win*. The owners acknowledge that the Oklahoma Administrative Code "empower[s] the stewards to exercise plenary authority over all questions about horseracing." Appellants' Opening Br. at 7; *see* Okla. Admin. Code 325:20-1-8 (stating that the Stewards are empowered to determine all questions on eligibility of horses to race). In light of this plenary power, the owners stated in district court that they weren't challenging the suspension of the trainer's license. *See*

8

Appellants' Opening Br. at 5 (stating that the decision to suspend the owners' horse trainer "is not at issue in this appeal"). With that suspension, every horse handled by that trainer was automatically disqualified from racing. *See* Okla. Admin. Code 325:25-1-10(b)(1) "([A] horse is ineligible to start in a race if . . . [it] is trained by any person who is suspended or ineligible for a license."). And the owners haven't challenged that automatic disqualification.

The owners point out that the suspension did not prevent substitution of another trainer for *EOS A Political Win*. But the owners also conceded in district court that state racing officials had discretion whether to allow substitution of another trainer and could use their judgment in exercising that discretion. *See* Appellants' App'x at 206 ("The decision to refuse the use of a substitute trainer was, in Defendants' own words, an exercise of discretion[,]" and "'[t]he exercise of discretion necessarily involves the 'exercise of judgment and choice'" (quoting Black's Law Dictionary 534 (9th ed. 2009))).

Despite the discretion of state racing officials, the owners argue that *Barry v. Barchi* required due process "in summary suspension proceedings for alleged horse drug violation by trainers." Appellants' Opening Brief at 32 (citing *Barry v. Barchi*, 443 U.S. 55, 64–65 (1979)). But *Barchi* applied New York racing law, not Oklahoma law, and the opinion does not suggest a right to participate in an Oklahoma horse race.

The owners also cite cases concerning property interests in rent subsidies and Massachusetts driver's licenses, but the owners don't explain how these cases establish a protected interest under Oklahoma law.

\* \* \*

State racing officials had discretion to suspend the trainer's license, disqualify the trainer's horses, and prevent substitution of another trainer. So Oklahoma's statute and administrative code did not create a protected interest for the owners to race *EOS A Political Win* after the suspension of its trainer.

**2.    The owners lacked a liberty interest in using *EOS A Political Win* to pursue business or leisure.**

The owners also allege deprivation of a liberty interest in using *EOS A Political Win* to pursue business or leisure. For the sake of argument, we may assume that the owners enjoy a liberty interest in the business of racing horses. But the owners remained free to pursue the business of racing horses; the owners challenge only their opportunity to participate in a single race while the trainer was under suspension. The inability to participate in that race did not deprive the owners of a liberty interest. *See Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (contrasting government actions causing "a brief interruption" of a person's occupation, which do not implicate a liberty interest, with "a complete prohibition of the right to engage in a calling"); *Martin Marietta Materials, Inc. v. Kan. Dep't of*

10

*Transp.*, 810 F.3d 1161, 1185–86 (10th Cir. 2016) (holding that governmental action barring the plaintiff's business from supplying certain products for state highway projects did not cause "the requisite harm to [the plaintiff] business as needed to find a violation of its liberty interest" because the plaintiff could still pursue other opportunities).

The owners cite two out-of-circuit cases, one dealing with humane societies seizing horses and the other with suspension of a driver's license. Appellants' Opening Br. at 18–19 (citing *Porter v. DiBlasio*, 93 F.3d 301, 307 (7th Cir. 1996) (seized horses); *Wall v. King*, 206 F.2d 878, 882 (1st Cir. 1953) (suspension of driver's license)). These cases rested on different facts; the owners don't explain how liberty interests in a seized horse or driver's license would show a protected interest in racing a horse that was ineligible because of the trainer's suspension.

Given the owners' failure to identify the deprivation of a liberty interest, the district court acted within its discretion in declining to alter or amend the judgment based on an interest in using the horse to pursue business or leisure.

### 3. The racing officials' alleged failure to allow pre-deprivation review did not deprive the owners of due process.

The owners also urge a property interest in a state-law cause of action. The availability of a "statutory cause of action" can create a property interest. *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d

11

1303, 1309 (10th Cir. 2018). The owners invoke this interest, pointing to Oklahoma statutes authorizing judicial review of an adverse decision by the Oklahoma Horse Racing Commission. Okla. Stat. tit. 75, § 322.

But even if this cause of action constitutes a property right, the owners didn't show a deprivation. The statute offers an opportunity for judicial review, but the statute doesn't say that the review must precede the deprivation. Indeed, the statute is triggered only when the Commission has already rendered an adverse decision.

Given the availability of the state cause-of-action authorized by the statute, the district court reasoned that the owners hadn't explained how they had been deprived of an opportunity to pursue their statutory remedy. *Cf. Gamble v. Webb*, 806 F.2d 1258, 1261–62 (5th Cir. 1986) (per curiam) (holding that the availability of a post-deprivation remedy was sufficient for temporary suspension of the license for an owner of a racehorse). On appeal, the owners don't explain what was wrong with the district court's reasoning. *See Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) (stating that the appellant must "explain what was wrong with the reasoning that the district court relied on in reaching its decision"). Given the absence of an explanation, we conclude that the owners haven't shown a deprivation of due process.[4]

---

[4] The owners also argue that "when . . . a party faces the threat of imminent harm to constitutional interests, Oklahoma imagines pre-

12

* * *

Once a plaintiff has established a property or liberty interest, the right to due process attaches. But without a property or liberty interest, the owners were not entitled to any form of process before officials disqualified *EOS A Political Win* from the race. The owners could have obtained judicial review after the race, and they haven't explained why this opportunity failed to supply due process.

## III. The district court did not abuse its discretion by denying leave to amend the complaint after dismissal of the action.

The owners also challenge the denial of their request for leave to amend the complaint. We reject this challenge.

### A. We again apply the abuse-of-discretion standard.

We usually review the denial of leave to amend a complaint under the abuse-of-discretion standard. *See Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700–01 (10th Cir. 2014). But when a district court denies leave to amend because amendment would be futile, "our review for abuse of discretion includes de novo review of the legal basis

---

deprivation remedies." Appellants' Opening Br. at 21. For this argument, the owners cite an Oklahoma opinion stating that "a writ of prohibition may be employed to control [a public officer's unlawful] actions." *Id.* (quoting *Draper v. State*, 621 P.2d 1142, 1147 (Okla. 1980)). But the owners forfeited this argument by omitting it in district court. *See Richison v. Ernest Group.*, Inc., 634 F.3d 1123, 1127-28 (10th Cir. 2011).

13

for the finding of futility." *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1249 (10th Cir. 2009).

The owners argue that the district court denied the motion to amend in part because amendment would be futile, triggering de novo review. But the district court didn't deny the motion to amend based on futility. The court instead reasoned that the owners had unduly delayed and flouted a local rule requiring attachment of the proposed amendment to the motion to amend. *Castanon v. Cathey*, No. 18-cv-00537-R, slip op. at 18–19 (W.D. Okla. Sept. 6, 2019). The court added that "[w]ithout a proposed pleading, the Court [was] unable to assess whether amendment would be futile." *Id.*

Because the owners' failure to comply with the local rule prevented the district court from assessing the futility of an amendment, de novo review is unwarranted. We instead apply the typical standard of review for the denial of leave to amend a complaint: abuse of discretion. *See* p. 13, above.

## B. The district court did not abuse its discretion in denying leave to amend the complaint.

District courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But limits exist. *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 706 (10th Cir. 2014).

The owners contend that they were entitled to amend their complaint because the case had been removed from state court to federal court,

14

triggering greater scrutiny of the complaint. Typically, "[r]emoval from a notice pleading jurisdiction is a natural time at which justice would call for the court to permit . . . an amendment." *Pena v. City of Rio Grande*, 879 F.3d 613, 617 (5th Cir. 2018). But here, the difference between the state and federal pleading rules did not contribute to the denial of leave to amend. Instead, the district court denied leave to amend because the owners had waited too long and had failed to attach the proposed amendment. Both reasons fell within the district court's discretion.

First, the district court had discretion to reject a tardy motion to amend a complaint. District courts may deny leave to amend when a plaintiff has waited too long and cannot account for the delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

The owners had ample time to amend their complaint, but they waited to seek amendment until more than fourteen months after the removal. The owners don't explain this delay. They instead question the case law stating that a district court may deny a request for leave to amend based on delay alone.

For instance, the owners point to *Foman v. Davis*, which states that leave to amend should be given freely. 371 U.S. 178, 182 (1962). Though *Foman* notes that leave to amend shall be given freely, *Foman* also includes a limitation, stating that amendment shall be permitted only "[i]n

the absence of any apparent or declared reason—such as undue delay . . . ." 371 U.S. at 182.

The owners also try to distinguish *Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1206 (10th Cir. 2004). There we denied a motion to amend a complaint based in part on the plaintiffs' delay. 382 F.3d at 1206. The owners point out that there the plaintiffs waited even longer, failing to seek amendment until after the district court had issued an adverse summary-judgment ruling. *Id.* at 1198, 1205. But even if *Combs* is distinguishable, the owners' unexplained delay here would be enough to affirm the district court's decision. "[U]nexplained delay alone justifies the district court's discretionary decision." *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994).

And the district court didn't rest on delay alone. The court also relied on the owners' failure to attach a copy of the proposed amendment. For this ground, the court cited a local rule requiring attachment of the proposed amendment when a party moves for leave to amend under Federal Rule of Civil Procedure 15. LCvR15.1 (eff. June 2018).

The owners argue that this rule didn't apply because they had based their motion on Rule 59(e), not Rule 15, and "court rules, like other legislative enactments, are subject to the same rules of construction as statutes." Appellants' Opening Br. at 34. But the owners overlook the applicability of Rule 15 to their request for leave to amend the complaint.

16

When an action is dismissed, the plaintiff can amend the complaint only by

- moving to reopen the case under Rule 59(e) or Rule 60(b) and
- moving for leave to amend under Rule 15.

*Requena v. Roberts*, 893 F.3d 1195, 1208 (10th Cir. 2018); *Glenn v. First Nat. Bank*, 868 F.2d 368, 371 (10th Cir. 1989).

In moving to alter or amend the judgment under Rule 59(e), the owners asked for leave to amend "if the [district court had] lingering concerns about the factual sufficiency of the Complaint." Appellants' App'x at 210. Though the owners didn't invoke Rule 15, it is the only rule authorizing amendment of the complaint.

Because Rule 15 applied, the district court had the discretion to apply the local civil rule requiring a party to attach the proposed amendment when seeking leave to amend the complaint. *See Crestview Vill. Apts. v. HUD*, 383 F.3d 552, 558 (7th Cir. 2004) (upholding denial of a Rule 59(e) motion, in which the plaintiff sought alteration or amendment of the judgment to facilitate the filing of an amended complaint, based on the failure to attach the proposed amendment). So the district court didn't abuse its discretion by relying in part on the owners' failure to attach the proposed amendment.

\* \* \*

17

After dismissing the action, the district court acted within its discretion when disallowing amendment of the complaint. The court reasonably relied on the owners' delay and failure to attach the proposed amendment.

## IV.    Conclusion

We conclude that the district court acted within its discretion by rejecting the owners' request to alter or amend the judgment. So we affirm.