**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 25, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARK W. SPINELLI,

    Plaintiff - Appellant,

v.

COHERUS BIOSCIENCES, INC.,

    Defendant - Appellee.

No. 24-2179

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:23-CV-00361-DHU-KK)**
_____

Vanessa L. DeNiro of DeNiro Law, LLC, Rio Rancho, New Mexico, for Plaintiff - Appellant.

Ryan S. Carlson, of Nukk-Freeman & Cerra, PC, Chatham, New Jersey (Iman A. Wells of Nukk-Freeman & Cerra, PC, Chatham, New Jersey, and Faith Kalman Reyes of Verdi & Ogletree PLLC, Santa Fe, New Mexico, with him on the brief), for Defendant - Appellee.
_____

Before **HOLMES**, Chief Judge, **KELLY**, and **MORITZ**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Plaintiff-Appellant Mark Spinelli filed suit against his former employer Coherus Biosciences, Inc. for terminating his employment after he refused to receive a mandatory COVID-19 vaccine. The district court granted Coherus's motion to

dismiss and later denied Mr. Spinelli's motion to alter or amend the judgment. On appeal, Mr. Spinelli argues that the district court erred in dismissing Counts I and IV of his amended complaint and should have allowed him to file a second amended complaint. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## Background

Mr. Spinelli worked at Coherus as an Oncology Account Manager for about eight months, from February 1, 2021, until October 7, 2021. Aplt. App. 24, 28. His role involved developing relationships with oncology practices and encouraging them to use a certain medication. Id. at 24–25. Mr. Spinelli worked remotely for the entirety of his employment due to the COVID-19 pandemic. Id. at 25. On June 14, 2021, Coherus announced that it would require all employees to show proof of vaccination against COVID-19 by July 19, 2021. Id. at 26. And on June 28, 2021, Coherus announced that it would require sixty percent of customer interactions to be face-to-face, and that unvaccinated employees could not engage in face-to-face interactions. Id. At the time, only two of Mr. Spinelli's forty customer accounts allowed in-person visits. Id.

Mr. Spinelli claims that in 2015 he suffered an adverse reaction to a chickenpox vaccine that caused paralysis of the left side of his torso and face and resulted in "permanent" and "irreversible nerve damage[.]" Id. at 27. After learning about Coherus's new policy, Mr. Spinelli consulted with his primary healthcare provider on whether the COVID-19 vaccine would be safe for him. Id. His provider produced a note stating that Mr. Spinelli has permanent nerve damage from a prior

2

vaccine injury, that he is at increased risk of further nerve damage and paralysis from the COVID-19 vaccines, and that she recommends he not receive any of the available COVID-19 vaccines.  Id.  Mr. Spinelli submitted a medical exemption request to Coherus on July 19, 2021, as well as a religious exemption request.  Id. at 27–28.

After some back-and-forth communication, Aplt. Br. at 6–8, Coherus denied Mr. Spinelli's exemption requests on October 1, 2021, and notified him that his last day of employment would be October 7, 2021, Aplt. App. 28.  The "Notice of Termination" stated that "a good number" of Coherus's clients required vaccination to meet in person and that to permit Mr. Spinelli to work remotely "would create an undue hardship and burden on the Company's business and negatively impact its ability to do what is necessary to reach its revenue goals."  Aplt. App. 128.

Mr. Spinelli filed claims with the New Mexico Human Rights Bureau (NMHRB) and the Equal Employment Opportunity Commission (EEOC).  Id. at 30. The NMHRB issued an Order of Non-Determination, granting him the right to pursue his claim in court.  Id. at 30, 95.

After first filing in state court, Mr. Spinelli filed an Amended Complaint (the "complaint") in federal court, alleging employment discrimination and retaliation on the basis of (1) a serious medical condition and disability, and (2) religious beliefs (Count I), relying upon the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. §§ 28–1–1 to –14.  Id. at 31–35.  He also alleged common law retaliation (Count IV).  Id. at 42–43.  The district court dismissed most of his claims without

3

prejudice.[1]  Spinelli v. Coherus Biosciences, Inc., No. 1:23-CV-00361-LF-KK, 2024 WL 1833864, at *11 (D.N.M. Apr. 26, 2024) ("Spinelli I").  The court dismissed Count I because Mr. Spinelli failed to plausibly allege a disability under the NMHRA and failed to demonstrate that the exemption request caused his termination.  Id. at *4–6.  The court dismissed Count IV because Mr. Spinelli failed to identify a specific public policy that his discharge violated.  Id. at *9–10.  Mr. Spinelli then filed an unsuccessful motion to alter or amend the district court's judgment.  Aplt. App. 185–218; Spinelli v. Coherus Biosciences, Inc., No. 1:23-CV-00361-DHU-KK, 2024 WL 5164690, at *3 (D.N.M. Nov. 4, 2024) ("Spinelli II").  Mr. Spinelli now appeals.[2]

---

[1] The district court dismissed Count I with prejudice only with respect to his religious discrimination and retaliation claim under Federal Rule of Civil Procedure 12(b)(1) because Mr. Spinelli failed to exhaust administrative remedies, and his claim became time-barred.  Spinelli v. Coherus Biosciences, Inc., No. 1:23-CV-00361-LF-KK, 2024 WL 1833864, at *7 (D.N.M. Apr. 26, 2024).

[2] The district court did not enter a final judgment after issuing its Memorandum Opinion and Order.  An opinion describing the court's findings of fact and legal conclusions is not a judgment, "but rather a statement of the reasons supporting the judgment."  12 Moore's Federal Practice—Civil § 58.02 (3d ed. 2025).  When the finality of a district court's decision is unclear, "we look to the language of the district court's order, the legal basis of the district court's decision, and the circumstances attending dismissal to determine 'the district court's intent in issuing its order[.]'"  Moya v. Schollenbarger, 465 F.3d 444, 451 (10th Cir. 2006) (quoting Petty v. Manpower, Inc., 591 F.2d 615, 617 (10th Cir. 1979)).  Here, although the court dismissed most claims without prejudice and did not enter a final judgment, the order denying the motion to alter or amend provided clarity on the intent of the first order.  And both parties agree that the district court's order is a final order subject to appeal, further illuminating the objective intent of the first order.  Oral. Arg. 1:35–4:43, 18:21–19:22.  Guided by Moya, we agree with the parties that the order on the motion to dismiss is final and therefore we have jurisdiction over the appeal from that order.  But given the ambiguity a dismissal without prejudice may

4

## Discussion

### A.    Motion to Dismiss

We review the district court's grant of a motion to dismiss de novo.  Porter v. Ford Motor Co., 917 F.3d 1246, 1248 (10th Cir. 2019).  In so doing, we assume that all well-pled factual allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor.  Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 181 (2024).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However, we need not accept legal conclusions as true.  Id.  The complaint must show that there is "more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

On appeal, Mr. Spinelli first argues that the court incorrectly applied the motion to dismiss standard and granted "preferential treatment to Coherus."  Aplt. Br. at 17, 19–20; Aplt. Reply Br. at 4–6.  However, Mr. Spinelli does not explain

---

create, we stress the importance of entering a separate judgment in cases governed by Federal Rule of Civil Procedure 58(a), as one way a district court may ensure the finality of its order.  See Fed. R. Civ. P. 58; Bankers Tr. Co. v. Mallis, 435 U.S. 381 (1978); Warren v. Am. Bankers Ins. of Fla., 507 F.3d 1239, 1242 (10th Cir. 2007).  District courts should enter a judgment in a separate document when dismissing a case in accordance with Rule 58.  This does not apply to orders disposing of a motion to alter or amend the judgment.  Warren, 507 F.3d at 1242.

how or in what way the court misapplied the governing law or treated Coherus preferentially. Otherwise, Mr. Spinelli challenges the district court's holding that he failed to state a plausible claim for employment discrimination or retaliation under the NMHRA and that he failed to identify a public policy to support his common law retaliation claim. We consider each claim in turn.

  1.  Employment Discrimination and Retaliation under the NMHRA

In describing the NMHRA claim, Mr. Spinelli's complaint states that "[Coherus] engaged in a pattern and practice of unlawful discrimination and retaliation against Plaintiff because of Plaintiff's medical condition[.]" Aplt. App. 31–32. The New Mexico Supreme Court relies on Americans with Disabilities Act (ADA) precedent for guidance on NMHRA claims. See Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 41 P.3d 333, 338 (N.M. 2025); see also Kuhler v. PHI Health, LLC, 748 F. Supp. 3d 1059, 1069 (D.N.M. 2024) ("[T]he New Mexico Supreme Court functionally adopted the Tenth Circuit's articulation of the [ADA] as applied to a NMHRA claim."). Although Mr. Spinelli did not plead separate discrimination and retaliation claims — nor, for that matter, identify the elements of either claim — the district court addressed the claims separately, as do we. Spinelli I, 2024 WL 1833864, at *3–6. We agree with the court's disposition.

  a.  Discrimination

The NMHRA provides that it is unlawful for "an employer . . . to discharge . . . or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . physical or mental

6

disability" or "serious medical condition[.]" N.M. Stat. Ann. § 28–1–7(A). To state a discrimination claim under the NMHRA, a plaintiff must show "(1) that he [or she] is a disabled person within the meaning of the ADA; (2) that he [or she] is qualified . . . ; and (3) that the employer terminated him [or her] because of the disability." Trujillo, 131 N.M at 612 (alterations in original) (quoting White v. York Int'l Corp., 45 F.3d 357, 360–61 (10th Cir. 1995)) (applying the ADA standard to the NMHRA).

In his complaint Mr. Spinelli alleges that Coherus discriminated against him because of a serious medical condition or disability.[3] Aplt. App. 32. A "physical or mental disability" is defined as an "impairment that substantially limits one or more of an individual's major life activities" and "a serious medical condition" is defined as "a serious health-related impairment other than a disability, which substantially limits one or more of an individual's major life activities[.]" N.M. Code R. § 9.1.1.7(R), (Z) (West 2023). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working," and other activities as defined under the ADA. Id. § 9.1.1.7(Q).

The district court held that Mr. Spinelli failed to plausibly allege the first element of a discrimination claim — that he is disabled — because he did not plead

---

[3] Although the district court discussed "disability" and "serious medical condition" separately, as two different bases for discrimination, see Spinelli I, 2024 WL 183386, at *4–5, Mr. Spinelli notes that he uses the words interchangeably, Aplt. Br. at 2 n.1. As discussed below, both theories for discrimination depend on whether an impairment substantially limits a major life activity. Therefore, we consider them together.

any facts suggesting that his impairment affects a major life activity. Spinelli I, 2024 WL 1833864, at *4–5. We agree.

The complaint states that "Plaintiff has a serious medical condition, or disability, preventing him from taking the COVID-19 vaccine" and that "Plaintiff produced a medical exemption that was prepared by his provider, who directed him not to take the vaccine." Aplt. App. 32. The Statement of Facts contains a bit more background, explaining that in 2015 Mr. Spinelli "experienced a significant adverse reaction [to a vaccine] that caused the entire left side of his torso and face to become paralyzed" and that "[a]lthough he regained partial mobility approximately a month later, Mr. Spinelli was left with permanent, irreversible nerve damage as a result of the vaccination." Id. at 27. The complaint says nothing more about his impairment and does not mention any major life activities.

Coherus contends that this is not enough. Although we have yet to say so at the motion to dismiss stage, we agree with Coherus that at a minimum the complaint must identify a major life activity. See Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1216 (10th Cir. 2007) (stating, at the summary judgment stage, that a plaintiff must identify at least one major life activity to satisfy the ADA's disability definition). And the complaint does not do so here. Instead, Mr. Spinelli lists symptoms — with little detail on those symptoms — and does nothing to show how such symptoms satisfy the NMHRA definition of a serious medical condition or disability. Without more, his allegations are, at best, "mere conclusory statements" that cannot survive a motion to dismiss. Iqbal, 556 U.S. at 678.

8

But Mr. Spinelli argues "that there is no overly-technical reason for him to specifically state that his disability substantially limits a major life activity at this stage in the case[.]" Aplt. Br. at 22. Instead, the court should have inferred that he has an impairment that substantially limits a major life activity. Id. at 23. Although Mr. Spinelli correctly notes that we make reasonable inferences in the plaintiff's favor at this stage, there is nothing in the complaint to support a reasonable inference that he is disabled within the meaning of the NMHRA. Mr. Spinelli's complaint does not mention the words "major life activity" or "substantially limiting," let alone provide any further detail on this point. See generally Aplt. App. at 24–33. We agree with Coherus that this omission regarding a major life activity is untenable. Aplee. Br. at 22; see Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012) (stating that "general assertions of discrimination" are insufficient to survive a motion to dismiss in the context of Title VII and the Family and Medical Leave Act).

Mr. Spinelli relies on Allen v. SouthCrest Hospital, a nonprecedential order and judgment in which we considered whether migraines constitute a disability under the ADA. 455 F. App'x 827 (10th Cir. 2011). In affirming the district court's summary judgment in favor of the employer, we held that the plaintiff failed to show that her migraines — the impairment — substantially affect the major life activities of caring for oneself or working. Id. at 831–35. Mr. Spinelli argues that his case is stronger because he "sustains more physical impairments in comparison to the plaintiff in Allen[.]" Aplt. Br. at 24. He explains he has difficulty chewing and brushing his teeth, he has diminished feeling in his left hand, and he has accidently

9

burned himself while cooking — all things that impact major life activities such as sleeping, caring for himself, and taking vaccines. Id. at 24–25.

Although Mr. Spinelli cites Allen for support, we are not persuaded. There we rejected the plaintiff's allegations as "conclusory at best," noting that the plaintiff failed to present specific evidence of her diminished ability to care for herself compared to the average population. Allen, 455 F. App'x at 833. Similarly, in his complaint, Mr. Spinelli did not point to comparative evidence. Tellingly, he failed to identify any major life activities in his complaint at all.

In addition to arguing that the court should have inferred major life activities, Mr. Spinelli references his "subsequent filings" that provide more detail on how his impairment affects daily life activities. See Aplt. Reply Br. at 7, 13–14. And he argues in his opening brief, for the first time, that his impairment substantially affects the major life activities of sleeping, caring for himself, and taking vaccines. Aplt. Br. at 24–25. But this is all too late. Identifying major life activities for the first time in post-complaint filings, let alone on appeal, is problematic for the movant and the district court.

A motion to dismiss is decided on the face of the complaint. Iqbal, 556 U.S. at 678; Waller v. City & Cnty. of Denver, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019). We do not consider facts or allegations outside the complaint, including those raised for the first time on appeal, in assessing a motion to dismiss. Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995); Cohon ex rel. Bass v. N.M. Dep't of Health, 646 F.3d 717, 730 (10th Cir. 2011). Properly considering the complaint on its own, it

10

simply does not meet the pleading burden.[4]  We affirm the district court on the discrimination claim.

### b. Retaliation

The NMHRA prohibits an employer from "engag[ing] in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint . . . under the Human Rights Act." N.M. Stat. Ann. § 28–1–7(I)(2).  To state a claim for retaliation under the statute, a plaintiff "must show that (1) he engaged in protected activity, (2) he was subject to adverse employment action subsequent to, or contemporaneous with the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action." Juneau v. Intel Corp., 127 P.3d 548, 552 (N.M. 2005). Under our circuit's precedent, "if the adverse employment action has occurred within a short time after the protected activity, causation may be inferred from this evidence alone." Id. at 554 (acknowledging, but not yet adopting the Tenth Circuit temporal proximity rule, because the plaintiff presented other evidence of causation).

The district court held that even if Mr. Spinelli sufficiently pled the first two elements above, he failed to demonstrate causation. Spinelli I, 2024 WL 1833864,

---

[4] Coherus also compares the allegations in Mr. Spinelli's opening brief with those in his complaint to show how they are new or different. See Aplee. Br. at 19–20.  Mr. Spinelli contests Coherus's characterization of the complaint, arguing again that the court could have inferred certain details from his complaint.  Aplt. Reply Br. at 7–10.  But considering the complaint and its reasonable inferences cannot do the work here of alleging major life activities involved.

at *6.  Mr. Spinelli only alleged facts suggesting causation based on temporal proximity.  Id.  However, two and a half months passed between submitting the exemption request and his termination, and the district held that this was too attenuated, relying on our decision in Meiners v. University of Kansas, 359 F.3d 1222 (10th Cir. 2004).  There we held that "two months and one week" is too long "to establish causation by temporal proximity alone."  Id. at 1231.

Mr. Spinelli first challenges the district court's reliance on Meiners because Meiners involved review of the grant of summary judgment.[5]  Aplt. Br. at 27.  But this is not persuasive as to the legal question of whether the time frame involved is too long to suggest temporal proximity.  Mr. Spinelli also argues that he need not plead a prima facie case, he need only plead facts suggesting an inference of unlawful discrimination.  Aplt. Br. at 28; Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006).  That is true, but "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."  Khalik, 671 F.3d at 1192.  And we have held that without close temporal proximity the plaintiff must rely on additional evidence to suggest

---

[5] Mr. Spinelli does not argue that the court erred in relying on the Tenth Circuit's temporal proximity rule.  Aplt. Br. at 27.  We note, however, that the New Mexico Supreme Court has acknowledged the federal temporal proximity rule, but "[left] for another day the question of when the time between the employee engaging in protected activity and the employer taking adverse action might be sufficient to allow an inference of a causal connection between the two."  Juneau, 127 P.3d at 554.

causation, and Mr. Spinelli's complaint asserts no other factual allegations in support of causation or retaliation.  Meiners, 359 F.3d at 1231.

Next, Mr. Spinelli contends that the district court considered the wrong timeline.  Aplt. Br. at 29.  Mr. Spinelli and Coherus communicated back-and-forth about the requests over several months.  See id. at 30–32.  For example, Mr. Spinelli filed his first medical exemption request on July 19 and two days later, on July 21, Coherus notified Mr. Spinelli that it could not provide an accommodation and that his last day of employment would be August 15, a date that Coherus eventually extended.  Id. at 30.  According to Mr. Spinelli, he engaged in protected activity continuously between July 19 and October 1, 2021, when his last exemption request was denied.  Id. at 32–33.  We agree that his protected activity likely continued past the July 19 date.  But crucially, Mr. Spinelli did not include any other events or dates in his complaint besides the dates of his initial exemption request and the notice of termination.  See Aplt. App. 27–28.

But even if Mr. Spinelli could show temporal proximity, the facts do not support a reasonable inference that Coherus terminated Mr. Spinelli because he asked for an exemption.  Coherus claims it terminated Mr. Spinelli because he failed to comply with the company-wide policy, not because he submitted an exemption request.  Aplee. Br. at 30–31.  The record supports this.  See Aplt. App. 86 (Coherus's COVID-19 Vaccination Policy); id. at 128 (Notice of Termination).

We recently considered a similar case in which an employer terminated the plaintiff's employment after he did not comply with the company vaccine policy.

13

Bereznak v. Arrow Elecs., Inc., No. 24-1394, 2025 WL 2462657, at *1 (10th Cir. Aug. 27, 2025). We held that the plaintiff failed to plausibly allege that but for his opposition to the vaccine policy he would not have been terminated. Id. at *2. Instead, the record showed he was discharged because of his failure to comply with the policy. Id.; see also Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 170–71 (2d Cir. 2024). We find this order and judgment's reasoning to be persuasive. See 10th Cir. R. 32.1(A). Though this case is not precisely analogous to Bereznak, we find that Mr. Spinelli, like the plaintiff in Bereznak, failed to plausibly plead he would not have been discharged but for his opposition to the company-wide vaccine policy. Mr. Spinelli alleged that the policy applied to all employees. Aplt. App. 26. And he alleged that all unvaccinated employees were to be "prohibited from having face-to-face interactions with customers" but that a company-wide condition of employment as of June 28, 2021 was that at least "sixty (60%) percent of all customer interactions must be face-to-face." Id. In light of those allegations, Mr. Spinelli did not plausibly plead that Coherus terminated his employment because he filed an exemption request or opposed the company-wide vaccine policy. Instead, those allegations suggest he would have been terminated even if he never submitted an exemption request nor expressed opposition in any way other than remaining unvaccinated.

    2.  Common Law Retaliation

Although employees are generally terminatable at will, New Mexico recognizes an exception for retaliatory discharges. Sherrill v. Farmers Ins. Exch.,

374 P.3d 723, 727 (N.M. Ct. App. 2016). To state a claim for common law retaliation in New Mexico, "an employee must (1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that he or she acted in furtherance of the clearly mandated public policy; and (3) show that he or she was terminated as a result of those acts." Id. State statutes or court decisions can provide the clear mandate of public policy. Id. at 728. In his complaint, Mr. Spinelli alleges that the following public policy grounds protected his conduct: "(i) a workplace free from religious discrimination, medical discrimination, and discrimination based upon other protected class distinctions is of vital interest to the public at large and (ii) maintaining personal bodily integrity and medical choice is necessary for the preservation of individual liberty guaranteed by both State and Federal Constitutions." Aplt. App. 43.

The district court dismissed the claim, holding that Mr. Spinelli's complaint did not identify a statute or court decision supporting his public policy. Spinelli I, 2024 WL 1833864, at *10. The court also noted that the New Mexico Supreme Court has declined to find that failure to adhere to employment policies furthers a public policy, see Paca v. K-Mart Corp., 775 P.2d 245, 247 (N.M. 1989), and that refusing vaccination does not benefit the public at large, Spinelli I, 2024 WL 1833864, at *10.

On appeal, Mr. Spinelli argues that the NMHRA captures the relevant public policy, and that although he did not identify the statute as the basis of his claim in the complaint, we can infer that he intended to invoke the NMHRA based on his

15

discussion of it elsewhere.  Aplt. Br. at 34–35; Aplt. Reply Br. at 21.  But this proves too much given the need for a plaintiff to identify a clear public policy as expressed in legislation or case law to make out a claim for common law retaliation.  Sherrill, 374 P.3d at 728.  Without identifying the source of public policy in his complaint, he does not state a plausible claim for relief.[6]  See Iqbal, 556 U.S. at 678.  We affirm the district court on the motion to dismiss this claim.

### B.     Motion to Alter or Amend

We review a motion to alter or amend under Federal Rule of Civil Procedure 59(e) for abuse of discretion.  Nelson v. City of Albuquerque, 921 F.3d 925, 929 (10th Cir. 2019).  "Under this deferential standard of review, we won't disturb the district court's ruling unless it was arbitrary, capricious, whimsical, or manifestly unreasonable."  Pueblo of Jemez v. United States, 63 F.4th 881, 889 (10th Cir. 2023) (quoting Eaton v. Pacheco, 931 F.3d 1009, 1027 (10th Cir. 2019)).  A material error of law is an abuse of discretion.  Id.  "Grounds warranting a motion to reconsider

---

[6] The parties also dispute whether the NMHRA can support a claim for common law retaliation in this case or others.  Mr. Spinelli argues that the NMHRA can support a common law retaliation claim even though the NMHRA statute provides its own cause of action, but the case law is inconsistent.  Aplt. Br. at 35–36; see Cordova v. New Mexico, 283 F. Supp. 3d 1028, 1047 (D.N.M. 2017) (noting that "[s]ome federal district courts have concluded that a tort claim of wrongful discharge under New Mexico law cannot exist when another cause of action provides redress[,]" but ultimately disagreeing with those courts).  Meanwhile, Coherus argues that once a court finds that a plaintiff's termination did not violate the NMHRA, the plaintiff cannot bring a wrongful termination claim based on a violation of public policy.  Aplee. Br. at 35–36; see Chavez v. Qwest, Inc., 483 F. Supp. 2d 1103, 1112 (D.N.M. 2007).  We need not resolve this dispute because Mr. Spinelli did not identify the NMHRA as the source of public policy in his complaint.

16

include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). But a Rule 59(e) motion "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Id.

The district court found none of the grounds warranting reconsideration present. Spinelli II, 2024 WL 5164690, at *2–3. Mr. Spinelli now argues that the court's ruling "was not supported by sound reasoning," and that the court "misapprehended" facts and law, resulting in "manifest injustice." Aplt. Br. at 39, 41, 54 (citation modified). We find no abuse of discretion in the district court's decision not to revisit its prior decision on the grounds urged.

As for Mr. Spinelli's request to amend the complaint, he argued that (1) the dismissal of his religious discrimination/retaliation claim under Rule 12(b)(1) should have been decided under Rule 12(b)(6) so that additional facts and exhibits attached to the complaint could have been considered along with the court's equitable powers applied to timeliness and (2) the dismissal of his common law retaliation claim should have taken the NMHRA into account because he incorporated by reference his prior allegations which referred to the NMHRA, thereby satisfying the public policy element. Aplt. App. 216–17. He seemed to argue for a chance to amend under both Rule 59(e) and the more liberal Rule 15(a). For its part, Coherus pointed out (among many other arguments) that Mr. Spinelli did not attach a proposed amended complaint as required by the local rule. See D.N.M.LR-Civ. 15.1; Aplt. App. 237,

252.  By the time of his reply, Mr. Spinelli argued that an amended complaint was unnecessary because he merely was seeking leave to file and the district court should allow him to file a formal Rule 15 motion with a proposed amended complaint.  Aplt. App. 265–66.

Because the district court denied Mr. Spinelli's motion to amend the judgment, there was no reason to reach his request for leave to amend.  See Calderon v. Kansas Dep't of Soc. & Rehab. Servs., 181 F.3d 1180, 1185 (10th Cir. 1999) (holding that a party must first move to reopen a case under Rule 59(e) or 60(b) before seeking leave to amend under Rule 15).  However, the court did consider and deny his request on the merits, finding that submission of an amended complaint would not change the fact that Mr. Spinelli failed to claim religious discrimination before the NMHRA and EEOC charges.  Spinelli II, 2024 WL 5164690, at *3.  The district court then concluded that "the law on the matter has not changed, there is no new evidence, and there is no clear error or manifest injustice making an amended complaint futile and subject to dismissal."  Id.

Mr. Spinelli now argues that the denial was prejudicial and manifestly unjust, and that he should be permitted to amend his complaint because amendment would not prejudice Coherus and because he could add additional facts to his complaint. Aplt. Br. at 54–56.  We can affirm the district court on the basis that Mr. Spinelli failed to satisfy the Rule 59(e) standard, as Calderon suggests a plaintiff must do — for example, by demonstrating new, previously unavailable facts warrant altering or amending judgment — before requesting leave to amend.  Calderon, 181 F.3d

at 1185; United States v. Rodriguez, 945 F.3d 1245 (10th Cir. 2019) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." (citation modified)).

In any event, we would reach the same decision given de novo review which is appropriate when a district court denies leave because amendment would be futile. Castanon v. Cathey, 976 F.3d 1136, 1144 (10th Cir. 2020). A proposal to amend a complaint is futile if the amended complaint would be subject to dismissal. Gohier v. Enright, 186 F.3d 1216, 1218 (10th Cir. 1999). And we decide to dismiss based on the face of the complaint. Iqbal, 556 U.S. at 678. As noted at oral argument, merely stating in the motion that "Plaintiff reincorporates all preceding paragraphs as if fully set forth herein" cannot reasonably require the district court to frame an amended complaint from the preceding thirty pages of text seeking reconsideration. Aplt. App. 214. And without an amended complaint before us, we can find no grounds warranting amendment. The district court committed no legal error in denying leave to amend.

AFFIRMED.